IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| POLLY KELLY and KIERICA COLBERT, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CIVIL ACTION FILE NO. 1:17-cv-01365-MHC |
| THE ONE GROUP, LLC; THE WILLIAM BREMAN JEWISH HOME, INC., | ) ) ) | |
| Defendants. | ) ) | |

## JOINT MOTION TO APPROVE SETTLEMENT AND TO DISMISS ACTION WITH PREJUDICE

Plaintiffs Polly Kelly ("Kelly") and Kierica Colbert ("Colbert") ("Plaintiffs") and Defendants The One Group, LLC; The William Breman Jewish Home ("Defendants") (collectively "the Parties"), respectfully seek the Court's approval of their FLSA settlement (the "Settlement") with respect to Plaintiff's claims in this wage and hour case against Defendants.

## 1.   INTRODUCTION

The Parties reached the Settlement after months of investigation and arms-length negotiations. The Settlement, if approved, will provide meaningful relief to those affected.  Accordingly, Plaintiffs and Defendants jointly request that the

Court enter the Order Approving Settlement and Dismissing the Action with Prejudice.  In support of this Motion, the Parties jointly state as follows:

## 2.    BACKGROUND

On April 18, 2017, Plaintiffs filed this action asserting claims under the Fair Labor Standards Act. [Dkt. 1] Plaintiffs alleged they worked off-the-clock and, thus, Defendants failed to pay them the appropriate overtime premium. *Id*. Defendants denied the allegations. [Dkt. 8] Defendants informally provided extensive payroll and timekeeping records that allowed Plaintiffs to make a reasonably accurate estimate of their unpaid wages. After a series of negotiations, the Parties have resolved their differences and now seek approval from this Court to avoid the risks, distractions, and costs that will result from further litigation. The executed Settlement Agreement and Release of Claims (the "Agreement") is attached hereto as Exhibit A. As Mr. Colbert has a pending Chapter 13 Bankruptcy case, she has also submitted an application for approval of the settlement agreement and payments made to counsel. (1:17-bk-61550 (Dkt. 45))

### ARGUMENT AND CITATIONS OF AUTHORITY

In the context of a private lawsuit brought by an employee against an employer under the FLSA, an employee may settle and release FLSA claims against an employer if the Parties present the district court with a proposed settlement and the

district court enters a stipulated judgment approving the fairness of the settlement.

As the Eleventh Circuit explained in *Lynn's Food Stores, Inc. v. United States*[1]:

> Settlements may be permissible in the context of a suit brought
> by employees under the FLSA for back wages because
> initiation of the action by the employee provides some
> assurance of an adversarial context. The employees are likely to
> be represented by an attorney who can protect their rights under
> the statute. Thus, when the Parties submit a settlement to the
> court for approval, the settlement is more likely to reflect a
> reasonable compromise of disputed issues than a mere waiver
> of statutory rights brought by an employer's overreaching, if a
> settlement in an employee FLSA suit does reflect a reasonable
> compromise over issues, such as FLSA coverage or
> computation of back wages that are actually in dispute, we
> allow the district court to approve the settlement in order to
> promote the policy of encouraging settlement of litigation.
>
> *Id.* at 1354.

## A.     Standards for Approval of an FLSA Compromise

*Lynn's Food Stores* requires that the Court to review a proposed compromise of

FLSA claims for "fairness."  However, the criteria the Court are to consider in

determining "fairness" is not as clear.  As the court in *Dees v. Hydradry, Inc.*, 706

F. Supp. 2d 1227, 1240-1 (M.D. Fla. 2010) noted:

> *Lynn's Food* requires the Parties to an FLSA compromise to
> present proposed agreement to the district court, which "may
> enter a stipulated judgment after scrutinizing the settlement for
> fairness." [*Lynn's Foods*,] 679 F.2d at 1353.  Although noting
> the unfairness of the settlements at issue, *Lynn's Food* specifies

---

[1] 679 F.2d 1350, 1353 (11th Cir. 1982)

FPDOCS 33872600.1

no criteria for evaluating the "fairness" of a proposed compromise in a different case.

### *(1)    Initial Considerations from Dees*

The Parties should provide the Court with "enough information for the court to examine the bona fides of the dispute" including the nature of the dispute, the material facts and claims, and an estimate of hours worked or compensation owed in order to understand the nature of the compromise. [2]  Further, an employee may not prospectively waive his FLSA rights as a part of a compromise.[3] In addition, the Court should address the attorneys' fees agreed upon to insure that the fees agreed upon did not adversely affect the Plaintiff's recovery. [4]

The *Dees* Court continued:

> *Bonetti v. Embarq Management Co.,* [715 *F. Supp. 2d* 1222 (M. D. Fla. 2009)], describes the problem faced by a district court:

> Short of a bench trial, the Court is generally not in as good a position as the Parties to determine the reasonableness of an FLSA settlement. Many factors may be in play as the Parties negotiate a compromise that is acceptable to both sides. The Parties may disagree as to the number of hours worked by the plaintiff, the plaintiff's status as an exempt employee, or the

---

[2]  *Dees v. Hydradry, Inc.,* 706 F. Supp. 2d 1227, 1242 (M.D. Fla. 2010)

[3] *Dees v. Hydradry, Inc.,* 706 F. Supp. 2d 1227, 1243 (M.D. Fla. 2010)

[4] *Dees v. Hydradry, Inc.,* 706 F. Supp. 2d 1227, 1243 (M.D. Fla. 2010)(quoting Bonetti, 715 F. Supp. 2d 1222 (MDF) 2009)(Noting that the Court would not separately consider the reasonableness of the fee to be paid to counsel unless there was some indication that settlement amount or process was problematic.)

4

defendant's status as a covered employer. In certain cases, the Defendant may assert (or threaten to assert) a counterclaim arising from the employment relationship. If the Parties are represented by competent counsel in an adversary context, the settlement they reach will, almost by definition, be reasonable. Rarely will the Court be in a position to competently declare that such a settlement is "unreasonable."[5]

Further from the *Dees* Court:

Nevertheless, the district court must "scrutinize the settlement for fairness." To fully implement the policy embodied by the FLSA, the district should scrutinize the compromise in two steps. First, the court should consider whether the compromise is fair and reasonable to the employee (***factors "internal" to the compromise***). If the compromise is reasonable to the employee, the court should inquire whether the compromise otherwise impermissibly frustrates implementation of the FLSA (***factors "external" to the compromise***). The court should approve the compromise only if the compromise is reasonable to the employee and furthers implementation of the FLSA in the workplace.[6]

## *(2) The Internal Factors:*

(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery amounts; and (6) the opinions of the counsel.[7]

---

[5] *Dees,* 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010)(quoting *Bonetti*)

[6] *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010)(emphasis added)

[7] *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010); *Pessoa v. Countrywide Home Loans, Inc.*, 2007 U.S. Dist. LEXIS 24076, 2007 WL 1017577, at 3 (M.D. Fla. Apr. 2, 2007) (quoting *Leverso v. South Trust Bank of Ala., Nat. Assoc.*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994)).

   *(3)*    ***The External Factors:***

> Compromise of a retrospective dispute may be permissible if, for example, the FLSA issue in a case is unresolvably close on the facts or the law or some extraordinary circumstance (say, a suddenly disabled claimant or an employer in liquidation) commends a speedy or certain resolution. On the other hand, several factors may commend rejecting a proposed compromise, including the presence of other employees situated similarly to the claimant, a likelihood that the claimant's circumstance will recur, a history of FLSA non-compliance by the same employer or others in the same industry or geographic region, or the requirement for a mature record and a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace. In all instances, the district court should faithfully execute the congressional mandate for "minimum wages, promptly paid . . . for the lowest paid segment of the nation's workers.[8]

## 3.   THIS FLSA COMPROMISE SHOULD BE APPROVED AS FAIR

### A. Initial Considerations

Defendants employed Kelly as a caregiver and as a staffing coordinator in and around Atlanta, Georgia from approximately August 20, 2015 through June 3, 2016. Defendants employed Colbert as a caregiver and as a staffing coordinator in

---

[8] *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1244 (M.D. Fla. 2010)(*quoting D.A. Schulte v. Gangi*, 328 U.S. 108, 116, 66 S. Ct. 925, 90 L. Ed. 1114 (1946)).

FPDOCS 33872600.1

and around Atlanta, Georgia from approximately March 25, 2015 through May 31, 2016. Plaintiffs were compensated on an hourly basis. Plaintiffs allege that they worked time that was not captured or reflected in the company's time records.  In addition, the regulations governing overtime compensation for caregivers changed during Plaintiffs' employment. The actual effective date of that new regulation is unclear and affected the claims of each Plaintiff differently because of their own work periods. Defendants deny that Plaintiffs worked uncompensated time off-the-clock, and further dispute the effective date in the change to overtime regulations applicable to at-home caregivers.  This bona-fide dispute reduces the likelihood that liquidated damages may be awarded. Regardless, both Kelly and Colbert agree this resolution pays them for substantially all of their estimates of what they should be paid as wages and paid an amount for liquidated damages within the range of what they might have received at trial.

As to Attorneys' fees and costs, the Parties negotiated these amounts separately. Counsel will receive attorneys' fees from the Defendants in the total amount of $9,958.02. Plaintiffs were afforded the option of paying a cost retainer or paying 25% of liquidated damages in return for counsel's agreement to fund costs without recourse. Defendants are not a party to this contractual arrangement. Plaintiffs opted to have counsel advance costs. Pursuant to the retainer agreement[9] between

---

[9] See *Moore v. Americus Restaurant Group, Inc.*, 1:17-cv-107(WLS), Dkt. 21 (M.D. Ga. October 6, 2017) (The Court discussed the 25% arrangement in approving an attorneys' fee award noting that the "[F]ee agreement to advance costs provided that Plaintiff may

7

counsel and Plaintiffs, counsel will also receive twenty-five percent of the liquidated damages paid to Plaintiffs ($454.10 from Kelly and $264.41 from Colbert) for a total attorneys' fee award of $10,676.53. Plaintiffs' counsel has accrued approximately $12,000 in fees and costs for the claims they pursued for Plaintiffs at rates that have been previously approved in the Northern District of Georgia. [10] Plaintiffs' counsel is willing to reduce his fee in this matter in order to resolve the matter.

### B. Internal Factors

choose to personally bear the costs of litigation or have the firm hold him harmless in the event of no recovery for a fee of 25% of liquidated damages. Plaintiff chose the latter.")
[10] See *Forester v. Mdpons*, *et al*, Northern District of Georgia, civil action 1:15-cv-03378-ELR (Dkt.47, p.11); *Obertein, et al v. Assured & Associates*, *et al*, Civil Action No. 1:14-cv-00490-AT, Dkt. 100 (05/04/17); *Miller v. Rockdale County*, 1:16-cv-04149-WSD (Dkt. 12, p.4) ("The Court also finds the amount of attorneys' fees and costs to be paid by Defendant to Plaintiff's counsel is reasonable in view of the results obtained and the customary fee for similar legal services provided in the Atlanta market. . . . . The Court notes that multiple courts have approved the requested hourly rates of $400 per hour for attorneys Mitchell D. Benjamin and Charles R. Bridgers, as well as the rates of $145 per hour for senior paralegal Jessica Sorrenti and $105 per hour for paralegal Sarah Toenes, as detailed in the declarations of counsel."
*See* also *Villa-Garcia v. Latin Mundo #2, Inc.,* Northern District of Georgia, civil action 1:15-cv-03378-ELR (Dkt.23) wherein the Court approved the current hourly rates of counsel of $425 for all partners (up from $400); $325 for associate Matthew Herrington (up from $275); $165 for senior paralegal Jessica Sorrenti (up from $145), and $125 for paralegal Sarah Toenes (up from $105) and approving the contractual requirement of 25% of liquidated damages (" (2) the terms of the Settlement Agreement are fair and reasonable and represent an adequate resolution of this action; and (3) the attorneys fees including the rates charged by counsel and the additional contractual requirement of twenty-five percent of liquidated damages, are reasonable and customary.")

As noted above, *Dees* lists a number of internal factors: (1) The existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery amounts; and (6) the opinions of the counsel. [11]

Here, all Parties were represented by experienced counsel in an adversarial process that demonstrates no evidence of fraud of collusion. As with litigation where fee shifting is required, both Parties were cognizant that litigation can be time consuming and very expensive. If settlement was not reached at this time, numerous depositions would have needed to be taken, dispositive motions would likely have been filed, and significant delay in resolution of this dispute would ensue.

The Parties disagree as to the merits of this case. Plaintiffs and counsel believe that disputed issues of fact likely would permit this case to go to trial and that Plaintiffs' testimony and other evidence of liability will be credited by a jury. Defendants disagree and contend that they would prevail at summary judgment or at trial.  Thus, substantial uncertainties and risks existed for all Parties and was a significant catalyst to serious settlement negotiations.

---

[11] *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010); *Pessoa v. Countrywide Home Loans, Inc.*, 2007 U.S. Dist. LEXIS 24076, 2007 WL 1017577, at 3 (M.D. Fla. Apr. 2, 2007) (quoting *Leverso v. South Trust Bank of Ala., Nat. Assoc.*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994)).

Beyond this, the Parties had access to virtually all of the time, pay, and external records that were ever going to be available while making their estimates of damages.  This resolution is certainly within the range of the evidence. Therefore, any further litigation or discovery would not provide Plaintiffs with any certain additional benefit. In sum, the Parties and their counsel prudently attempted to devote their limited resources towards settlement, rather than continued litigation.

### C.    External Factors

As stated above, the Dees Court noted the following external factors:

> Compromise of a retrospective dispute may be permissible if, for example, the FLSA issue in a case is unresolvably close on the facts or the law or some extraordinary circumstance  . . . commends a speedy or certain resolution. On the other hand, several factors may commend rejecting a proposed compromise, including the presence of other employees situated similarly to the claimant, a likelihood that the claimant's circumstance will recur, a history of FLSA non-compliance by the same employer or others in the same industry or geographic region, or the requirement for a mature record and a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace.[12]

---

[12]  *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1244 (M.D. Fla. 2010)(*quoting D.A. Schulte v. Gangi*, 328 U.S. 108, 116, 66 S. Ct. 925, 90 L. Ed. 1114 (1946)).

FPDOCS 33872600.1

Other "external factors" to examine when considering the fairness of a proposed FLSA settlement, address whether the compromise frustrates the purposes of the FLSA. *Dees*, 706 F. Supp. 2d at 1244. Here, the purpose of the FLSA is not frustrated in that Plaintiffs are receiving almost full value for their claims after a detailed review of those claims and there is no request for confidentiality or other restrictive covenants.  Given these facts, a detailed analysis of the external factors is not overly necessary.

**4.   CONCLUSION**

For the foregoing reasons, the Parties respectfully request that the Court approve the compromise entered into between the Parties. The Parties also request that the Court dismiss this action with prejudice, but retain jurisdiction to enforce the Parties Settlement Agreement, if necessary. A proposed order is attached hereto for the Court's consideration.

Respectfully submitted.

Counsel for Plaintiffs:

**DELONG CALDWELL BRIDGERS FITZPATRICK & BENJAMIN, LLC**

*s/ Charles R. Bridgers*

3100 Centennial Tower
101 Marietta Street
Atlanta, Georgia 30303
Telephone (404) 979-3150
Facsimile (404) 979-3170
charlesbridgers@dcbflegal.com

Charles R. Bridgers
Georgia Bar No. 080791
Mitchell D. Benjamin
Georgia Bar No. 049888

11

benjamin@dcbflegal.com


Counsel for Defendants:

FISHER & PHILLIPS, LLP

/s/ Martin B. Heller
Martin B. Heller
Georgia Bar No. 360538

1075 Peachtree Street
Suite 3500
Atlanta, Georgia  30309
T:  770.231.1400
F:  770.240.4249
mheller@fisherphillips.com

FPDOCS 33872600.1

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

POLLY KELLY and KIERICA )
COLBERT, )
        )
    Plaintiffs, )
        )
v. )     **CIVIL ACTION FILE**
        )     **NO. 1:17-cv-01365-MHC**
THE ONE GROUP, LLC; THE )
WILLIAM BREMAN JEWISH )
HOME, INC., )
        )
    Defendants. )

## SETTLEMENT AGREEMENT AND RELEASE

This settlement agreement (hereinafter referred to as "Agreement") is entered into by and between Polly Kelly and Kierica Colbert, on behalf of themselves, their heirs, executors, administrators, legal representatives, trustees and assigns (hereinafter referred to individually as "Kelly" and "Colbert") and The One Group, LLC, The William Breman Jewish Home, Inc., and all of their respective present, past, and future affiliates, predecessors, heirs, successors, parents, subsidiaries, assigns, insurers, and each and every one of their respective owners, shareholders, servants, officers, directors, employees, agents, principals, relatives, representatives, beneficiaries, alter egos, and attorneys (hereinafter referred to collectively as "the Released Parties").  Throughout this Agreement,

Kelly, Colbert and the Released Parties shall collectively be referred to as "the Parties." This Agreement shall not in any way be construed as an admission by the Released Parties of any violation of any law or any other liability, including common law liability to Kelly and/or Colbert.

Whereas, Kelly and Colbert allege unlawful pay and employment practices in violation of federal law against The One Group, LLC and The William Breman Jewish Home, Inc. within a lawsuit titled *Polly Kelly and Kierica Colbert v. The One Group, LLC and The William Breman Jewish Home, Inc.*, Civil Action No. 1:17-cv-01365-MHC (N.D. Ga. Atlanta Division), allegations which the Released Parties vehemently deny;

Now wherefore, in consideration of the promises and mutual covenants contained herein, the sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1) The Released Parties agree to pay Kelly a total amount of nine thousand three hundred and forty-three dollars and seventy-six cents ($9,343.76), broken down as follows:

   a. Two thousand four hundred and twenty-one dollars and eighty-eight cents ($2,421.88) representing unpaid overtime wages.  This payment

shall be treated as wages with the applicable taxes and legal deductions made;

    b. One thousand eight hundred and sixteen dollars and forty-one cents ($1,816.41) representing liquidated damages. Kelly shall provide the Released Parties with a W-9 form for this payment. No deductions shall be made from this check, and a Form 1099 shall be issued;

    c. Five thousand one hundred and five dollars and forty-seven cents ($5,105.47) to her attorney, Charles Bridgers, for attorney's fees and costs. Charles Bridgers shall provide the Released Parties with a W-9 form for this payment.

2) The Released Parties agree to pay Colbert a total amount of seven thousand three hundred and twenty dollars and forty cents ($7,320.40), broken down as follows:

    a. One thousand four hundred and ten dollars and twenty cents ($1,410.20) representing unpaid overtime wages. This payment shall be treated as wages with the applicable taxes and legal deductions made;

    b. One thousand and fifty-seven dollars and sixty five cents ($1,057.65) representing liquidated damages. Colbert shall provide the Released

Parties with a W-9 form for this payment.  No deductions shall be made from this check, and a Form 1099 shall be issued;

c.  Four thousand eight hundred and fifty-two dollars and fifty five cents ($4,852.55) to her attorney, Charles Bridgers, for attorney's fees and costs.  Charles Bridgers shall provide the Released Parties with a W-9 form for this payment.

3)  Kelly and Colbert agree that this is a disputed claim.  Kelly and Colbert agree and acknowledge that, upon approval of this Agreement by a court of competent jurisdiction, they release and waive any and all claims for unpaid compensation that they actually brought or could have brought in any lawsuit filed against the Released Parties, including those brought in this matter, and including but not limited to claims for unpaid overtime and/or minimum wage under the Fair Labor Standards Act, as well as any other type of wage or payment claim.  Further, Kelly and Colbert affirmatively state that they are not aware of, do not have a basis to support, and otherwise release, any other remaining claims of any type that they currently may have against the Released Parties arising out of their employment.  The Parties agree to file an appropriate motion or pleading with the Court to dismiss Kelly and Colbert's currently pending lawsuit with prejudice.

4) By entering into this Agreement, no Party admits any liability, fault or wrongdoing.

5) Each party shall be responsible for payment of their own attorneys' fees and costs, except as provided in paragraphs 1 and 2.

6) Kelly and Colbert represent and warrant that they are authorized to enter into this Agreement and that they have the authority to perform the terms of this Agreement.  Kelly and Colbert represent and warrant that they have not sold, assigned, transferred, conveyed, or otherwise disposed of all or any portion of the claims released in this Agreement.  Colbert represents that she has an active bankruptcy action (N.D. Ga. 1:17-bk-61550).  Colbert seeks court approval of the terms of the resolution contained herein, but agrees and acknowledges that she will not have a personal right to recover under this agreement, nor will her attorney have a right to recover the attorney's fees related to pursuing her claim, unless and until her bankruptcy court has approved the settlement terms.  She has filed a motion to approve this settlement in her bankruptcy action (N.D. Georgia 1:17-bk-61550 (Dkt. 45)).  Distribution of Colbert's funds to either her or her counsel will be made pursuant to the Bankruptcy Court's direction only.

7) If any provision of this Agreement or the application thereof to any party or circumstances shall be determined to be invalid or unenforceable to any extent, the remainder of the Agreement and the application of such provisions to any other party or circumstances shall not be affected thereby and shall be enforced to the greatest extent permitted by law.

8) This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument.  Facsimile and electronic copies of the executed Agreement shall have the same force and effect as an original copy.

9) This Agreement is binding on each of the parties and their respective heirs, successors, and assigns.

10)     In the event any party breaches this Agreement, the non-breaching party shall be entitled to enforce all provisions of this Agreement in court, seeking all remedies available to it both in law and equity.  The prevailing party shall be entitled to recover its attorneys' fees and costs incurred in any proceeding to enforce this Agreement, including all fees and costs through appeals.

11) This Agreement shall be governed by and construed in accordance with the laws of the State of Georgia, without regard to its choice of laws or conflict of laws principles.

12) Except as expressly provided herein, the parties represent and warrant that in executing this Agreement, they do not rely upon and have not relied upon any oral or written representation, promise, warranty or understanding made by any of the parties or their representatives with regard to the subject matter, basis or effect of this Agreement.

13) The parties acknowledge that each party has participated in the drafting of this Agreement.  No ambiguity shall be construed against any party based upon a claim that the party drafted the ambiguous language.

14) The parties acknowledge and assume the risk that additional or different facts which they believe to exist may now exist or may be discovered after this Agreement has been entered into.  The parties agree that any such additional, different or contrary facts shall in no way limit, waive, affect or alter this Agreement.

15) Kelly and Colbert acknowledge that they have been advised to and have in fact consulted with attorney Charles Bridgers prior to signing this Agreement.

16)     This Agreement is freely and voluntarily entered into by the parties.

The parties acknowledge that they have read this Agreement and that they

understand the words, terms, conditions and legal significance of this

Agreement.


Date: 3/26/18        _____

                     Polly Kelly

Date: 3/29/18        _____

                     Kierica Colbert


Date: 4.2.2018       _____

                     Beth Laxton, Representative of The One Group,
                     LLC and The William Breman Jewish Home, Inc.